**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DOUGLAS MICHAEL HEIDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12-cv-5318 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security[1], ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Douglas Michael Heider ("Heider" or "Claimant"), seeks review of the denial of his request for Social Security disability benefits. Heider filed the instant complaint and moves for summary judgment [21]. The Commissioner filed a cross-motion for summary judgment in response [26]. For the reasons that follow, this Court denies Heider's motion for summary judgment and grants the Commissioner's motion for summary judgment.

**Procedural Background**

Heider filed for benefits on November 9, 2009, pursuant to Title II and Title XVI of the Social Security Act, claiming that he became disabled on February 6, 2006, due to anxiety, depression, diabetes type I, post injury to his left hip and his spine, seizures, hypertension, and high cholesterol. After initially denying benefits on July 23, 2010, and denying reconsideration, the Administrative Law Judge ("ALJ") granted Heider's request for a hearing. The ALJ held a hearing on July 20, 2011, and issued a fully unfavorable decision on August 25, 2011. The Appeals Council denied Heider's request for Review of Hearing Decision on June 8, 2012, rendering the decision of the ALJ final.

---

[1] Carolyn W. Colvin, the current commissioner of social security, is substituted as defendant.

1

**Factual Background**

**1. Hearing Testimony**

Mr. Heider testified on his own behalf that at the time of the hearing he was 34 years old, a high school graduate, was separated from his wife and has one child with his domestic partner. (R. 50). His medical problems include: Type I diabetes mellitus with neuropathy, has had laser treatments to correct his vision, had a grand mal seizure in October 2009, high cholesterol, hypertension, depression and anxiety. (R. 59-61). He claimed a disability onset date of February 6, 2006. (R. 125). His last day of work was December 28, 2009, for a temporary employment company called Labor Ready. Heider testified that he was unable to perform the duties of the job because of issues related to maintaining and testing his blood sugar. (R. 57). Before that, Heider worked as a gas station clerk, but quit because he had to stand the entire shift. Heider further testified that he has looked for work since December 28, 2009, but he believed employers' credit checks reveal a large amount of unpaid medical bills and therefore his medical condition. (R. 58). Heider has also been previously employed as a forklift driver, before being laid off due to cutbacks. (R. 59). Heider's other relevant employment history is as a nurse assistant.

He testified that he spends his day trying to manage his blood sugar, eat properly, and spend time with his daughter. Heider testified that he can lift twenty pounds, five pounds frequently, he can stand or walk for twenty minutes before needing to stop, and can sit for only fifteen or twenty minutes before needing to move around. In an eight-hour workday, Heider could stand for three or four hours, and sit for four hours. (R.72-73). Heider testified that he has not had any alcohol since February 2010 and has not smoked marijuana in over two years. (R. 62, 78).

Timothy Tansey, the vocational expert ("VE"), also testified at the hearing testified to the exertion levels and skill levels of Heider's prior employment. (R. 79-85). The VE testified that Heider's prior employment as a nurse assistant would still be available to him at a medium work level with postural limitations against climbing ladders, ropes, or scaffolds, and an environmental need to avoid moderate exposure to hazards. If Heider were limited to light work, the VE testified that employment as a cashier II, housekeeping cleaner, and production assembler would still be available to him. (R. 81-82).

**2. Medical Records**

Dr. Audrey Richardson, primary care physician at Access Community Health Network provided a report for Social Security in addition to her progress notes. (R. 736-742). Dr. Richardson's report indicates that Heider is diagnosed with juvenile diabetes mellitus and insulin dependent. He has no recurring episodes of acidosis but has approximately 2-3 hyperglycemic episodes per week. Dr. Richardson's notes further indicate that Heider can carry less than ten pounds, has fluctuating blood sugar, peripheral neuropathy, vision problems from uncontrolled diabetes. She opines that his work attendance and performance will not be satisfactory because of hyperglycemic episodes. (R. 739).

Dr. Susan Vierling of Suburban Retina, Inc. in a letter to Dr. Jigma Joshi of the Whole Eye Center, informed Dr. Joshi of the results of referral. (R. 720-721). Dr. Vierling stated Heider had macular laser treatment in November 2010, for clinically significant macular edema in the left eye, and is doing well after treatment. Heider's corrected vision was 20/20 in the right eye and 20/25 in the left.

Dr. Jigma Joshi of the Whole Eye Center reported that Heider's vision would not be impaired by reading, bending, stooping, or lifting. (R. 708). As part of his evaluation of Heider,

3

Dr. Joshi found that he is not limited in his ability to ambulate safely or to avoid common hazards or to drive safely, or work around unprotected heights. Dr. Joshi found that Heider is able to safely perform the following functions frequently[2]: read fine print, work around dangerous machines, perform activities with good hand eye coordination, and perform activities that require good distant and detailed vision. (R. 708).

Dr. Ravikiran Tamragouri, consultative physician for Disability Determination Services ("DDS"), reported that Heider denied any alcohol or drug use since 1992, had not difficulty getting up and ambulating without assistance, normal heel to toe walk, no hand tremors, decreased sensation to touch in his hands, but performed alternating movements of his hands normally, and had full range of motion in all joints. (R. 604-605). Dr. Tamragouri's clinical impression was that Heider has diabetes with retinopathy and peripheral neuropathy, hypertension and high cholesterol, joint pain that Heider attributed to past injuries. (R. 605).

Dr. Joseph Nemeth, III, consultative psychiatrist gave the following impressions on June 2, 2010: Heider has a long history of depression since age 13, including sadness, mood swings, lack of motivation, and anxiety; he had suicidal ideation when he was younger, but none recently; history of alcohol abuse, drinking a case of beer from age 18 to 25 with occasional seizures and blackouts; smokes marijuana daily and most recently a week prior. (R. 610). Dr. Nemeth concluded that Heider has major depressive disorder, anxiety disorder, marijuana abuse and dependency, alcoholism by history.

Dr. Terry A. Travis, physician for DDS, submitted a report dated July 19, 2010, finding Heider's medical impairments are not severe, but he has affective disorders, major depressive disorder, anxiety disorders, and substance addiction disorders. (R. 616). Dr. Travis concluded that Heider has a mild limitation in the following areas: activities of daily living, difficulties

---

[2] "Frequently" means the activity can safely be performed from 1/3 to 2/3 of the workday.

maintaining social functioning, and difficulties maintaining concentration, persistence, or pace. (R. 626). Heider has had no episodes of decompensation. (R. 626).

Dr. Vidya Madala, physician for DDS, confirmed previous diagnoses and evaluations of consultative physicians. (R. 637). Dr. Madala also noted that claimant's statements are partially credible and that "the frequency and/or duration of his symptoms is not supported by the objective clinical findings in the file." (R. 637).

Dr. D. Wyma's psychiatric evaluation from Central DuPage Hospital for admission to partial hospitalization program was also submitted. Dr. Wyma's diagnosis was bipolar affective disorder, hypomanic, history of anxiety disorder, insulin-dependent diabetic with retinopathy and neuropathy. (R. 795). In Heider's history, Dr. Wyma noted that Heider claimed to drink alcohol once a week with a maximum of six beers and smokes marijuana every couple of months. (R. 794). Heider also described heavy alcohol and marijuana use in his past. (R. 793). Dr. Wyma further noted that Heider's diabetic retinopathy required corrective surgery and he has diabetic neuropathy in his fingers and feet. (R. 793).

The medical evidence also contains extensive records from various hospitals for emergency room visits including, Elmhurst Memorial Hospital, Advocate Good Samaritan Hospital, Central DuPage Hospital, Glen Oaks Hospital, and the Access/Russo Family Health Center.

**Legal Standard**

1. **Standard of Review**

The ALJ's decision becomes the final decision of the Commissioner of Social Security, if the Appeals Council denies a request for review. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The "findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. §405(g). The ALJ's decision is subject to judicial review by the district court. *Skarbek v. Barnhart*, 390 F.3d 500, 503, 105 Fed. Appx. 836 (7th Cir. 2004). A court will affirm the decision of the ALJ so long as he applied the correct legal standards in reaching his decision and there is substantial evidence in the record to support the findings. *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). Substantial evidence is sufficient if reasonable minds would accept it as adequate to support the conclusion. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009)(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).  If the ALJ's decision has adequate support, the reviewing court will affirm even if reasonable minds could differ concerning whether the claimant is disabled. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). The ALJ must minimally articulate his analysis so the Court can conduct a meaningful review. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

   2.  **Disability Standards**

In order to qualify for disability benefits, Heider must be found "disabled" under the Social Security Act ("the Act"), 42 U.S.C. §301 *et seq. Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "Disability" under the Act, means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to last for a continuous period of not less than 12 months. *Briscoe*, 425 F.3d at 351; 42 U.S.C. §§423(d), 416(i), and 1382c.

The ALJ uses a mandatory five-step sequential analysis to evaluate a disability claim. *Simila*, 573 F.3d at 512; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). The five-step analysis requires the ALJ to examine: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or

equals one of the listed impairments, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform his past work; and (5) whether, given the claimant's residual functioning capacity ("RFC"), age, education, and work experience, the claimant is capable of performing work in the national economy. *Simila*, 573 F.3d at 512-13. RFC refers to the highest level of claimant's performance ability despite his limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). To determine whether the claimant is able to perform his past work or is capable of performing other work (steps four and five), the ALJ must assess the claimant's RFC. *See* 20 C.F.R. §§ 404.1520(e), 404.1560(b)-(c), 416.920(e), 416.960(b)-(c). The ALJ must assess a claimant's RFC based on all the claimant's impairments and all the relevant evidence in the record. *Simila*, 573 F.3d at 513; *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). A finding of disability requires either an affirmative answer at step three or that the claimant is unable to perform any work in the national economy. *Briscoe*, 425 F.3d at 352. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id*.

**Discussion**

Heider asserts four arguments in support of his motion for summary judgment: (1) the ALJ gave inadequate consideration as to whether his diabetes mellitus with retinopathy and neuropathy met listing 9.08; (2) the ALJ failed to give controlling or adequate weight to the opinions of Dr. Audrey Richardson; (3) the ALJ failed to properly evaluate the seven factors listed in 20 C.F.R. 404.1529(c) to determine credibility; (4) the ALJ failed to consider all the limitations supported by the record in the RFC.

1. *Consideration of Claimant's Diabetes Mellitus with Retinopathy and Neuropathy*

Claimant first argues that the ALJ failed to give adequate consideration to Heider's neuropathy or tingling and numbness in the hands and feet. This Court disagrees. The ALJ

7

considered claimant's own testimony that he has trouble with balance and accounted for that limitation with a restriction on ladders, ropes, and scaffolding. The ALJ noted Heider's testimony of limited feeling in his hands but found the testimony, though credible, was not supported by the medical record. The ALJ relied on Heider's statements that he had no sensitivity to heat, cold or vibrations and also the examination report of Dr. Tamragouri, a consultative physician, in which he found that Heider did not have difficulty ambulating, had no tremors in his hands, was able to perform alternating movements of his hands normally, and had normal range of motion in all his joints. The ALJ may properly rely on medical experts' opinions to reach his conclusions. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

Heider also argues that the ALJ misinterpreted or failed to consider portions of Heider's opthalmologist's report. In his October 15, 2010, report, Dr. Jigna Joshi made certain specific determinations as to Heider's ability to safely perform certain activities and for what portion of the workday. (R. 708). However, "the ALJ is not required to discuss every piece of evidence but is instead required to build a logical bridge from the evidence to her conclusions." *Simila*, 573 F.3d at 516. Here, the ALJ gave greater weight to Dr. Joshi's conclusions that laser eye treatment would maintain good vision, and that claimant has unlimited abilities in ambulating safely, avoiding common hazards in the workplace, and working around unprotected heights. This Court finds the ALJ properly relied on Dr. Joshi's conclusions and accounted for the other limitations in establishing the RFC.

Claimant additionally argues that the ALJ did not look critically at whether Heider suffered from acidosis because the ALJ believed Heider's uncontrolled blood sugars were due to noncompliance with his insulin treatment. This argument is without merit where Heider's own primary care physician, Dr. Richardson, reported Heider has no episodes of acidosis.

2. *Weight Given the Primary Care Physician's Opinion*

Claimant asserts that more weight should have been given to Dr. Audrey Richardson's opinion as Heider's primary care physician. This Court disagrees that the ALJ improperly discounted Dr. Richardson's opinion. Under 20 C.F.R. 404.1527(c)(2) a treating physician's opinion is entitled to controlling weight when it is supported by the medical evidence and is not inconsistent with other substantial evidence. Here, the ALJ found that the medical record did not support Dr. Richardson's opinion and therefore he discounted her opinion and relied more heavily on the retained experts. The regulations instruct ALJs that state agency reviewing consultants and medical experts are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §404.1527(f)(2)(i).

3. *Claimant's Credibility*

The ALJ ultimately concluded that Heider was unable to find work rather than unable to perform work. Claimant takes issue with the ALJ's conclusion, however it is evident from his argument that he simply disagrees with the conclusion reached and cannot show that it is patently wrong. Claimant does not indicate how the ALJ failed to follow the seven factor analysis of credibility instead he argues how those factors should have been evaluated.

The factors to be considered by the ALJ when making a credibility determination are: (1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Scheck*, 357 F.3d at 703. These factors are in addition to "the absence of an objective medical basis which supports the degree of severity of subjective complaints alleged". *Id.* "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special

9

deference." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). This Court will reverse the ALJ's credibility determination only if the claimant can show it was "patently wrong." *Id.* (citing *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

Here, the ALJ provided a lengthy examination of Heider's credibility and claimant has not shown it is patently wrong. The ALJ discussed Heider's daily activity as part of his determination of the level of mental impairment, noting that Heider's personal care was intact with no reminders needed, that he is able to prepare simple meals, do chores, take public transportation and that the State Agency psychiatric consultant found Heider to be reasonably functioning. In consideration of the remaining factors, the ALJ noted work accidents that occurred long prior to Heider's alleged disability onset date and that the medical records showed a history of noncompliance with his insulin treatment.

The ALJ discussed several dates of hospitalization between December 2005 and February 2010 where Heider was noted by medical professionals as being either "insulin noncompliant" or having "uncontrolled diabetes". The ALJ considered the medical records and concluded based on the descriptions of treatment that once Heider's sugar levels were controlled, the symptoms of which he complained, lightheadedness, fatigue, weakness, etc. were alleviated. The ALJ then reached the logical conclusion that his blood sugar is not controlled because he fails to follow his insulin treatment and that his symptoms are therefore magnified by his noncompliance making his diabetes appear more severe. This conclusion is not speculation, as Heider claims, but instead a logical conclusion based on the notations in Heider's medical records, which indicate that he has not been taking his insulin and that his symptoms are alleviated, and he is released from the hospital, when his sugar is medically under control. Further, the ALJ specifically stated that noncompliance with insulin treatment was not the sole reason for the denial of benefits.

The ALJ then went on to discuss the medical consultative exam conclusions as well as Heider's inconsistent statements about drug and alcohol abuse. Further, the ALJ considered Heider's testimony and work history after the alleged disability onset date, including Heider's own testimony about his search for employment. While not perfect analysis, the ALJ provided a logical bridge to his conclusion with specific references to the testimony and the medical records.

4. *Limitations Supported by the Record for RFC*

Heider argues that the ALJ failed to consider that the cumulative effect of his impairments, though not disabling alone, in combination would be disabling. *See Terry v. Astrue*, 580 F. 3d 471, 477 (7th Cir. 2009). Heider alleges that the ALJ should have considered the following limitations: visual restrictions, with blurry or fuzzy vision, manipulative limitations on the ability to grip and grasp, foot pain, need for a sit-stand option, limited stand/walk for 15 minutes, inability to lift 10 pounds frequently, episodes of hypoglycemia and hyperglycemia that keep him off task. Essentially, Heider argues that the ALJ failed to properly assess his residual functional capacity because the ALJ did not address evidence purportedly favorable to his claim. This Court disagrees.

The ALJ found that claimant has the residual functional capacity to perform medium work (20 C.F.R. 404.1567(c) and 416.967(c)), subject to a limitation against climbing ladders, ropes, or scaffolds, and a need to avoid moderate exposure to hazards. The ALJ further found that Heider was capable of lifting up to fifty pounds occasionally and 25 pounds frequently and standing or walking for a total of six hours in an eight-hour workday. The ALJ reached this conclusion based in part on Heider's own testimony of his abilities. Contrary to Heider's assertion that the ALJ failed to account for all the limitations, the ALJ specifically described his

reasoning for not giving weight to certain claimed limitations. With respect to the visual limitations, the ALJ found no restriction necessary based on Heider's opthalmologist, Dr. Jigna Joshi's opinion, that after laser treatment Heider's ability to function and his employability would markedly improve and did improve. Heider's vision with correction was 20/20 in the right eye and 20/25 in the left. With respect to Heider's claimed limitations due to neuropathy or numbness in his hands and feet, the ALJ stated, referring to the medical consultant's examination, "while the claimant's testimony of some numbness in his hands and feet is credible, the record lacks supporting findings in the documentation to conclude that there is significant peripheral neuropathy." The ALJ further noted that he accounted for Heider's complaints of drowsiness and tiredness by limiting his lifting/carrying posturals and environmental exposure. "The ALJ's failure to address specific findings… does not render his decision unsupported by substantial evidence because an ALJ need not address every piece of evidence in his decision." *Sims v. Barnhart,* 309 F.3d 424, 429 (7th Cir. 2002).

**Conclusion**

Based on the forgoing, this Court finds that the ALJ applied the correct legal standards in reaching his decision and there is substantial evidence in the record to support the findings. Therefore, this Court affirms the decision of the ALJ denying disability benefits, denies Heider's Motion for Summary Judgment [21], and grants the Commissioner's Motion for Summary Judgment [26].

IT IS SO ORDERED.
Date: January 14, 2014

Entered: _____
United States District Judge